## EXHIBIT 1

### IN THE FEDERAL DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| NILOFER NANLAWALA, | |
| Plaintiff, | |
| v. | Case No.: 21-cv-5624 |
| CITY OF CHICAGO, a municipal corporation, | Hon. Judge Matthew F. Kennelly |
| Defendant. | |

### FIRST AMENDED COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff NILOFER NANLAWALA, by and through undersigned counsel, bringing this First Amended Complaint and Jury Demand against Defendant City of Chicago, a municipal corporation, for violations of 42 U.S.C. § 1983 for gender and race discrimination, and for race, sex, religion, national origin discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended. In support of her claims, Plaintiff states as follows:

### JURISDICTION AND VENUE

1.  Jurisdiction is proper under 28 U.S.C. § 1331 because this action arises under the laws of the United States. This action is brought pursuant to 42 U.S.C. § 1983 for gender and race discrimination and under Title VII of the Civil Rights Act of 1964, as amended, for race, sex, religion and national origin discrimination and retaliation. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on or about August 31, 2020, and received a Notice of Right to Sue on July 23, 2021.

1

2. Venue is proper under 28 U.S.C. § 1391(b). The parties reside and/or conduct business in this judicial district, and the events giving rise to the claims asserted herein occurred in this judicial district as well.

## THE PARTIES

3. Plaintiff NILOFER NANLAWALA ("Plaintiff") is a police officer with Defendant's Chicago Police Department.

4. Defendant CITY OF CHICAGO ("Defendant") is a municipal corporation that includes the Chicago Police Department ("CPD"). At all times relevant in this Complaint, Plaintiff was an applicant for employment at Defendant.

## FACTUAL ALLEGATIONS

5. Plaintiff is female and Muslim; her race is Asian and her national origin is Indian.

6. Upon successful completion of her Chicago Police Academy training in April of 2015, Plaintiff received her badge number and worked full-time with the Chicago Police Department ("CPD") as a police officer.

7. At the time of graduating from the academy, Plaintiff learned that she was pregnant.

8. After graduation, Plaintiff was initially assigned foot patrol for her 12-hour shifts.

9. Plaintiff requested light duty assignment. This was because Plaintiff could have no excess weight on her body (such as a duty belt or vest), could not do heavy lifting, could not be on her feet for long periods of time and needed to be close to a restroom. She requested this of her shift supervisors, the medical section at CPD, and human resources. Plaintiff's supervisor did not provide her with a Reasonable Accommodation Request form. CPD did not engage in the interactive process and did not accommodate her.

10.     Because CPD did not provide Plaintiff with a reasonable accommodation, Plaintiff kept a doctor's note regarding her restrictions with her in her vest to show shift supervisors each day she was assigned foot patrol.

11.     Over a two month period Plaintiff repeated her requests to no avail. Plaintiff provided two doctor's notes to CPD, one proactively, and another upon CPD's request. After retaining counsel, CPD granted Plaintiff her reasonable accommodation request.

12.     After delivering her baby, taking her maternity leave plus an additional six month leave, Plaintiff returned to work. Before receiving assignments, she successfully completed another training at the Police Academy. Because Plaintiff's baby was still nursing, she requested to pump breast milk during her shift.

13.     Around January 2017, Plaintiff was assigned to work at District 14 and she was placed on the midnight shift. Plaintiff was still nursing her baby and requested a private place to pump breast milk during her shift. Initially, the district's midnight shift lieutenant, Lt. Fine (retired), told other officers about Plaintiff's request and told them he would not allow it. Eventually, Lt. Fine permitted the request. The private place that Lt. Fine provided Plaintiff to pump breast milk was in the washroom next to unclean toilets. During the time she was breast pumping, no other private location was offered. Although Plaintiff found this to be demeaning, humiliating, and insulting, as a rookie police officer, she followed her lieutenant's orders.

14.     Lt. Fine also changed Plaintiff's start times and partners repeatedly. Upon information and belief, this was done so as to create confusion and performance issues for Plaintiff and to keep her in an unstable work environment.

15. The CPD police workday is divided into three shifts: 7 or 8 a.m. ("morning shift"); 3 or 4 p.m. ("afternoon shift"); and 9 or 10:30pm midnight ("midnight shift"). Plaintiff bid for shifts other than the midnight shift and other for positions within the CPD.

16. Because Plaintiff's regular shift was the midnight shift, a bid system is used to secure a spot on the day shifts. Positions that are management positions are not put through a bid system; management positions are selected by the district supervisors.

17. Plaintiff applied for at least two management positions at the 14th District where she worked. She was not selected for any of these positions.

18. For positions that require bids, preference is usually given to police officers with more years behind them.

19. Plaintiff repeatedly placed bids for these openings and each bid was denied.

20. When Plaintiff asked why her bid was denied, each time management stated that the other police officers had more years than she. Plaintiff noticed, however, that management granted at least eleven police officers their bids to work either of the day shifts, all of whom had less seniority than she. None of these eleven officers were nursing women, Asian, Indian, or Muslim.

21. Plaintiff also spoke to three lieutenants requesting to work either of the two day shifts; each denied her requests.

22. Plaintiff's spouse worked at the Illinois Department of Corrections and started his shift at 7am. Plaintiff requested to be scheduled for the early side of the midnight shift, which would have been from 9pm to 6am, so that she could return home in time to allow her husband to leave for work and for her to care for their two children rather than a babysitter. Plaintiff was routinely scheduled for the late side of the midnight shift, which worked from

4

10:30pm to 7:30am. Plaintiff informed two lieutenants of the reasons for her request when she put in the request, Lt. Block and Lt. Fine.

23. Four co-workers requested Plaintiff as their partner on the early side of the midnight shift, which would have begun at 9pm and ended at 6am. Again, the lieutenants denied the requests. One officer asked the lieutenant to have Plaintiff as her partner several times; the lieutenant denied the request stating that it would not happen.

24. Plaintiff's health began to suffer manifesting into increased stress, sleeplessness and back pain as a result of her treatment by Defendant. Plaintiff's physician recommended she work a shift other than the midnight shift believing that the combination of sleeplessness and growing stress led to the back pain. Without finding relief at work, Plaintiff went on medical leave due to back pain for six months beginning approximately in April 2017.

25. In addition to being denied working the two day shifts, Plaintiff also noticed that less experienced men and non-nursing women, non-Muslim, non-Asian, and non-Indians were assigned use of a consistent police vehicle during their shifts within six months of asking for this. Plaintiff's request, however, took two years before being granted.

26. Plaintiff was overlooked for positions for which she applied and in which she had greater experience and seniority than those who were given those positions.

27. An officer on the Robbery Team requested Plaintiff as her partner. Plaintiff requested assignment to the team and was denied. Men and non-nursing women, non-Muslim, non-Asian, and non-Indians were accepted to work this team.

28. Plaintiff applied multiple times to work on the Tactical Team. Each application was denied while often less experienced men and non-nursing women, non-Muslim, non-Asian, and non-Indians were accepted to work this team.

29. Under the guise of investigating Nilofer for a Tactical Team position Lt. Block, searched online and discovered an old Facebook profile belonging to Plaintiff. The profile included photos of Plaintiff wearing a hijab and attending a pro-Palestinian event. This involved a protest she attended before applying to CPD. A sergeant informed Plaintiff that the lieutenant had found this, informed him and other sergeants about it and then accused Plaintiff of being antisemitic. The sergeant warned Plaintiff that the lieutenant said he would issue her a write-up for being antisemitic. Ultimately, while this unfounded accusation never materialized, Plaintiff's stress surmounted at the thought of being disciplined for something unfounded. This slander damaged Plaintiff's reputation making her feel humiliated, disgraced, and seen poorly in the eyes of her co-workers and superiors.

30. Upon information and belief Lts. Block and Fine disparaged Plaintiff to the District Commander of the 14th District.

31. In March or April of 2020, Plaintiff requested a transfer to the 17th District which was granted. Plaintiff was not properly informed when she would start at the 17th District. Upon information and belief this was so as to cause her to miss work.

32. Shortly after the transfer, a fellow police officer informed Plaintiff that the 14th District Commander called his counterpart at the 17th District and disparaged her reputation stating that Plaintiff was a bad officer, a troublemaker, and abused her medical leave. Plaintiff unequivocally denies these accusations, particularly the latter in that she was never accused of such abuse in writing, verbally, or otherwise. The fellow police officer stated that the 17th District Commander, in response to this false information, stated he would have her continue to work the midnight shift.

33. As a consequence of the old District Commander's comments regarding Plaintiff, the new District Commander transferred her back to the 14th District. Plaintiff was not properly informed she was being sent back to the 14th District. Upon information and belief this was so as to cause Plaintiff to miss work.

34. In 2017 Plaintiff began to experience anxiety and later panic attacks as a result of her work environment, and working amid false rumors that had been circulated about her by higher ups.

35. Plaintiff went on Stress Medical Leave in May of 2020, and remains on leave.

### COUNT I - § 1983 VIOLATION OF PLAINTIFF'S CONSTITUTIONAL AND STATUTORILY PROTECTED RIGHTS

36. Plaintiff reasserts and realleges all previous paragraphs as if fully stated herein.

37. Plaintiff is female, and was pregnant and/or nursing from 2015-2017.

38. Plaintiff has a right to be free from discrimination on the basis of her gender under Title VII of the Civil Rights Act of 1964. Defendant discriminated against Plaintiff on the basis of her gender by failing to accommodate her reasonable requests while she was pregnant, and later while she was nursing. For example, Defendant violated Plaintiff's rights when it provided a bathroom as a private place to pump breast milk and provided no other alternative, denied her requests for earlier assignments within her shift, denied her requests for shift changes, or applications for new assignments or positions. Defendant also showed preferential treatment to less qualified employees who were not pregnant or nursing women.

39. The deprivations described above were caused by the deliberate acts of decision-makers, and proximately caused Plaintiff's injuries. These injuries include, but are not limited to, lost job assignments, promotions, lost potential earnings and emotional harm.

40. Plaintiff is Asian American. Defendant is aware that Plaintiff's spouse is Arab American.

41. Plaintiff has a right to be free from discrimination on the basis of her race under the Equal Protection Clause of the Fourteenth Amendment and Title VII of the Civil Rights Act of 1964. This protection extends to protection from discrimination on the basis of Plaintiff's spouse's race. Defendant discriminated against Plaintiff on the basis of race when it denied her bid to work in the Tactical Team because of her spouse's Palestinian origin. Defendant, upon information and belief, furthered this discrimination when it denied her other requests for shift changes, and when it denied her applications for other assignments and positions. Defendant showed preferential treatment to other less qualified, non-Asian employees and employees not married to Arabs.

42. The deprivations described above were caused by the deliberate acts of Plaintiff's decision-makers, and proximately caused Plaintiff's injuries. These injuries include, but are not limited to, lost job assignments, promotions, lost potential earnings and emotional harm.

## COUNT II – TITLE VII RACE DISCRIMINATION

43. Plaintiff reasserts and realleges all previous paragraphs as if fully stated herein.

44. Plaintiff is Asian American. Defendant is aware that Plaintiff's spouse is Arab American.

45. Defendant discriminated against Plaintiff on the basis of national origin when it denied her bid to work in the Tactical Team because of her spouse's Palestinian national origin. Defendant, upon information and belief, furthered this discrimination when it denied her other requests for shift changes, transfer, and when it denied her applications for other

assignments and positions. Defendant showed preferential treatment to other less qualified, non Asian employees and employees not married to Arabs.

46. Defendant's discriminatory conduct caused Plaintiff damages, including but not limited to, lost job assignments, promotions, lost potential earnings and emotional harm.

### COUNT III – TITLE VII SEX DISCRIMINATION

47. Plaintiff reasserts and realleges all previous paragraphs as if fully stated herein.

48. Plaintiff is female, and was pregnant and/or nursing from 2015-2017.

49. Defendant discriminated against Plaintiff when it provided a bathroom as a private place to pump breast milk and provided no other alternative, denied her requests for earlier assignments within her shift, denied her requests for shift changes, or applications for new assignments or positions. Defendant showed preferential treatment to less qualified employees who were not pregnant or nursing women.

50. Defendant's discriminatory conduct caused Plaintiff damages, including but not limited to, lost job assignments, promotions, lost potential earnings and emotional harm.

### COUNT IV – TITLE VII NATIONAL ORIGIN DISCRIMINATION

51. Plaintiff reasserts and realleges all previous paragraphs as if fully stated herein.

52. Plaintiff is Indian American. Defendant is aware that Plaintiff's spouse is Palestinian American.

53. Defendant discriminated against Plaintiff on the basis of national origin when it denied her bid to work in the Tactical Team because of her spouse's Palestinian national origin. Defendant, upon information and belief, furthered this discrimination when it denied her other requests for shift changes, when it denied her applications for other assignments

9

and positions. Defendant showed preferential treatment to other less qualified, non Asian employees and employees not married to Palestinians.

54. Defendant's discriminatory conduct caused Plaintiff damages, including but not limited to, lost job assignments, promotions, lost potential earnings and emotional harm.

### COUNT V – TITLE VII RELIGIOUS DISCRIMINATION

55. Plaintiff reasserts and realleges all previous paragraphs as if fully stated herein.

56. Plaintiff is Muslim.

57. Defendant discriminated against Plaintiff on the basis of her religion when, after finding pictures of her online wearing the traditional Muslim headscarf (*hijab*), it denied her a bid to work in the Tactical Team. Defendant, upon information and belief, furthered this discrimination when it denied her other requests for shift changes, and when it denied her applications for other assignments and positions. Defendant showed preferential treatment to other less qualified, non-Muslim employees.

58. Defendant's discriminatory conduct caused Plaintiff damages, including but not limited to, lost job assignments, promotions, lost potential earnings and emotional harm.

### COUNT VI – RETALIATION

59. Plaintiff reasserts and realleges all previous paragraphs as if fully stated herein.

60. Plaintiff engaged in protected activity when, after she became pregnant, she requested reasonable accommodations for her pregnancy and nursing.

61. Defendant retaliated against Plaintiff when supervisors disparaged her professionalism to colleagues and other supervisors, denied her requests for shift changes, and applications for other assignments and positions. Defendant showed preferential treatment for employees that did not engage in protected activity.

62. Defendant's conduct caused Plaintiff damages, including but not limited to, lost job assignments, promotions, lost potential earnings and emotional harm.

## CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE Plaintiff NILOFER NANLAWALA respectfully requests the Honorable Court grant judgment in his favor and against Defendant, awarding:

A. Actual damages;

B. Compensatory Damages;

C. An Injunction Prohibiting Defendant from Continuing Unlawful Employment Practices;

D. Costs;

E. Attorney's fees; and

F. Such other relief as the Court deems just and equitable.

Respectfully Submitted,
NILOFER NANLAWALA
Plaintiff

By:

| *[signature]* | *[signature]* |
|---|---|
| Christina Abraham, Esq.<br>Abraham Law and Consulting, LLC<br>161 N. Clark Street, Suite 1600<br>Chicago, IL 60601<br>(312) 588-7150<br>Christina.w.abraham@gmail.com | Janaan Hashim, Esq.<br>Amal Law Group, LLC<br>161 N. Clark Street, Suite 1600<br>Chicago, IL 60601<br>(312) 882-4122<br>jhashim@amallaw.com |

11

Attorneys for Plaintiff

December 14, 2021